**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| *ex rel*. PETER MICHAEL WANCO, JR., ) | Civil Action No. 1:19-cv-00196-JMC |
| ) | |
| Plaintiff-Relator, ) | **ORDER AND OPINION** |
| ) | |
| v. ) | |
| ) | |
| MOX SERVICES, LLC and ) | |
| ORANO FEDERAL SERVICES, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff-Relator Peter Michael Wanco, Jr. ("Relator") brings this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, on behalf of the United States and himself, against Defendants MOX Services, LLC ("MOX Services") and Orano Federal Services, LLC ("Orano")[1] (collectively, "Defendants"). (ECF No. 1.) This matter is before the court upon review of Defendants' Motion for Judgment on the Pleadings (ECF No. 17) pursuant to Federal Rule of Civil Procedure 12(c). The court **GRANTS** Defendants' Motion for Judgment on the Pleadings (ECF No. 17) and **DISMISSES** Relator's Complaint (ECF No. 1) **WITHOUT PREJUDICE**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

MOX Services contracted with the Department of Energy ("DOE") to design, build, and operate a Mixed Oxide Fuel Fabrication Facility ("MFFF") at the DOE's Savannah River Site ("SRS") in Aiken, South Carolina. (ECF No. 1 at 2-3 ¶¶ 8-11.) Relator worked for Orano, one of MOX Services' partners on the MFFF project, as a Quality Control Inspector from December 2016

---

[1] Orano was previously known as "Areva Federal Services." (ECF No. 1 at 3 ¶ 11.)

1

to March 2018 and alleges that Defendants violated the FCA by offering relocation packages to individuals who did not intend to relocate and constructively terminating his employment. (*Id.* at 3 ¶¶ 9-11, 13-15.)

After receiving an offer of employment from Areva Federal Services ("Areva") on November 28, 2016, Relator contacted Shakir Jones ("Jones"), an Areva recruiter, and requested a larger compensation package. (*Id.* at 8 ¶¶ 34-35.) Jones was unable to offer Relator a higher salary or a per diem but offered to provide him with "a relocation package that would include a miscellaneous allowance, lump sum allotment, plus household goods shipment and reimbursement on final moving expenses." (*Id.* ¶ 36.) Relator told Jones that he did not intend to relocate from Irmo, South Carolina to the SRS area but Jones explained that Relator did not need to move to receive the relocation package. (*Id.* ¶¶ 37-38.) Jones told Relator that he could "use the relocation package any way [he] like[d,]" because "[w]e don't require proof or receipts on how you use the money." (*Id.*) Relator accepted the position shortly thereafter and received a relocation package of approximately $21,000.00 even though he did not relocate. (*Id.* at 9 ¶¶ 39-40.) When Relator left the position over a year later, Orano demanded that he return the relocation package. (*Id.* ¶ 41.)

Relator maintains that the DOE could only reimburse MOX Services for "allowable incurred costs" under the Federal Acquisition Regulation ("FAR"), 48 C.F.R. (*Id.* at 6 ¶¶ 25, 25 (citing 48 C.F.R. § 16.301-1).) FAR § 31-205-35(a) provides that relocation costs are only "allowable" if "incident[al] to the permanent change of [an] assigned work location (for a period of 12 months or more) of an existing employee or upon recruitment of a new employee." (*Id.* at 6-7 ¶ 27.) Thus, Relator asserts that "by offering relocation packages to individuals who did not intend to relocate, the Defendants violated the FAR and submitted (or caused to be submitted)

2

false claims for reimbursement" in violation of FCA § 3729(a)(1)(A) and § 3729(a)(1)(B). (*Id.* at 9 ¶ 43, 14 ¶ 81.)

Relator also claims that Defendants' "retaliatory actions" resulted in his "constructive discharge from employment" and entitle him to relief under FCA § 3730(h). (*Id.* at 13 ¶ 74.) During his employment with Orano, Relator was responsible for revising and updating inspection protocols ("IP"). (*Id.* at 11 ¶ 54.)    In December 2017, Relator completed mechanical piping IP No. 5335-1. (*Id.* ¶¶ 55, 57.) The IP was approved by his supervisor, Marvin Neal ("Neal"), but another manager, Andy Johnston ("Johnston"), thought the IP was too long. (*Id.* ¶¶ 57-58.) Relator shortened the IP from forty pages to thirty-five pages and resubmitted it for Johnston's review. (*Id.* ¶ 59.) However, Johnston did not respond to Relator's draft and "instead revised the IP himself down to just 16 pages." (*Id.* ¶ 60.) Johnston's IP was approved in January 2018, but Neal asked Relator to revise the IP in March 2018 after a change to the project specification required an alteration to the IP. (*Id.* at 11-12 ¶¶ 62-64.) Relator declined to revise the IP because "it was not adequate to inform inspectors and he could therefore not sign his name to it." (*Id.* at 12 ¶ 64.) He was then warned that the situation would go "up the hill" and told "if you can't do this, we will have to get someone who can do this." (*Id.* ¶ 66.) Relator was subsequently informed that he was no longer needed to draft IPs and that he would be placed in the field to obtain a certification for review of civil engineering work. (*Id.* ¶ 67.) Since Relator considered the civil certification a demotion, he "took the remainder of the week off and resigned the following Monday." (*Id.* ¶¶ 68-69.)

Relator filed his Complaint (ECF No. 1) on January 23, 2019 and the Government declined to intervene in the action on January 2, 2020 (ECF No. 10). On February 12, 2020, Defendants filed an Answer (ECF No. 16) and a Motion for Judgment on the Pleadings (ECF No. 17). Relator

responded on February 26, 2020 (ECF No. 24) and Defendants submitted a Reply to Relator's Response (ECF No. 38) on March 27, 2020.

## II.     LEGAL STANDARD

Rule 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Deutsche Bank Nat. Tr. Co. v. I.R.S.*, 361 Fed. App'x. 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)). Given that a Rule 12(c) motion is decided under the same standard as a 12(b)(6) motion, all facts alleged in the complaint are presumed to be true and all reasonable inferences must be drawn in the plaintiff's favor. *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). However, the court is not required to accept the legal conclusions the plaintiff sets forth in his complaint as true. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). Because FCA claims sound in fraud, substantive FCA claims must satisfy both Federal Rule of Civil Procedure 8(a)'s plausibility requirement and Federal Rule of Civil Procedure 9(b)'s particularity standard to survive a motion to dismiss. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016).

Under Rule 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Rule 9(b) imposes a heightened pleading standard on fraud claims, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to comply "with Rule 9(b)'s particularity requirement for allegations of fraud is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)).

The FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the "gravity" and "quasi-criminal nature" of FCA liability since an entity found in violation of the FCA may be liable for treble damages. *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018).

Section 3729(a)(1)(A) of the FCA prohibits any person from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval." In false presentment cases under § 3729(a)(1)(A), a central question is "whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'" *Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86). A "claim" is "any request or demand, whether under a contract or otherwise, for money or property that ... is presented to an officer, employee, or agent of the United States." § 3729(b).

"[T]here are two ways to adequately plead presentment" of a false claim under Rule 9(b).

*Grant*, 912 F.3d at 197. First, a relator can "allege with particularity that specific false claims actually were presented to the government for payment." *Id.* (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013)). The relator must, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison*, 176 F.3d at 784). Second, the relator "can allege a pattern of conduct that would 'necessarily have led[ ] to submission of false claims' to the government for payment." *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457).

Section 3729(a)(1)(B) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." The provision does not require that the defendant personally "present" the false claim to the government. *Grant*, 912 F.3d at 200. However, the plaintiff must plead a connection between the alleged fraud and an actual claim made to the government. *Id.*

Section 3730(h) provides relief to employees who experienced retaliation as a result of their efforts to prevent FCA violations. Unlike §3729(a)(1)(A) and §3729(a)(1)(B) claims, retaliation claims under § 3730(h) are not subject to Rule 9(b)'s heightened particularity requirement. *Grant*, 912 F.3d at 200. Instead, a plaintiff need only satisfy Rule 8(a)'s notice-pleading standard to survive a motion to dismiss. *Id.* Accordingly, to sufficiently plead a § 3730(h) retaliation claim, a plaintiff must allege facts sufficient to support a "reasonable inference" of three elements: (1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result. *Id.*

### III.     ANALYSIS

### A. Count 1: FCA § 3729(a)(1)(A) and §3729(a)(1)(B)

The allegations in the Complaint are insufficient to allege that Defendants submitted a false claim or a fraudulent statement material to a false claim to the government. Relator claims that Defendants' provision of relocation packages to employees who did not relocate caused the United States to improperly reimburse Defendants in violation of §3729(a)(1)(A) and §3729(a)(1)(B). (ECF No. 1 at 13-14.) However, Relator's claim suffers from a lack of particularity.

The most glaring defect in Relator's Complaint is his failure to specifically allege that Defendants presented improper relocation expenses to the government for reimbursement. Not only does Relator fail to identify specific invoices or requests for payment that were submitted to the government for relocation expenses, but he also fails to generally describe Defendants' billing practices. As a result, it is unclear whether Defendants submitted a claim to the government for reimbursement of Relator's relocation benefits or other allegedly improper relocation expenses. In fact, it is possible that Defendants declined to bill the government for Relator's relocation package and absorbed the cost themselves. Due to his failure to sufficiently allege that Defendants submitted a false claim to the government, Relator also cannot establish that Defendants' allegedly false statements were "material" to a false claim.

Under Rule 9(b), "an FCA plaintiff may not merely describe a private scheme and then 'allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.'" *Grant*, 912 F.3d at 199 (quoting *Nathan*, 707 F.3d at 457). Since the Complaint does not suggest that Defendants submitted a claim to the government for reimbursement of any allegedly improper relocation package, Relator fails to plead Count I with sufficient particularity.

### B. Count 2: FCA § 3730(h)

Relator's allegations also fail to support the FCA retaliation claim against Defendants. First, the Complaint does not suggest that Relator engaged in "protected activity." Under § 3730(h), "protected activity" includes acts "in furtherance of an [FCA action]" and "other efforts to stop 1 or more [FCA violations][.]" *Grant*, 912 F.3d at 200. Here, Relator does not claim that he took any action to litigate his FCA claim or prevent an FCA violation before his resignation. He resigned almost a year before this FCA action was filed and the Complaint does not suggest that Relator ever opposed or reported an FCA violation while working for Orano. (*See* ECF No. 1 at 3 ¶ 9.) Instead, he appears to claim that he engaged in protected activity because he raised safety concerns about quality inspections. (*See id.* at 14-15.) Since Relator's safety concerns do not relate to FCA violations, they are insufficient to qualify as "protected activity" under the FCA. Second, the Complaint does not suggest that Defendants knew about Relator's alleged "protected activity" while he was employed by Orano. The Complaint does not allege that Relator identified or complained about fraudulent government billing while he was employed by Orano. It also fails to indicate whether Defendants knew that Relator intended to pursue an FCA action before he resigned from Orano.

## IV.     CONCLUSION

For the foregoing reasons, the court **GRANTS** Defendants' Motion for Judgment on the Pleadings (ECF No. 17) pursuant to Federal Rule of Civil Procedure 12(c) and **DISMISSES** Plaintiff-Relator Peter Michael Wanco, Jr.'s Complaint (ECF No. 1) **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

9

September 2, 2020
Columbia, South Carolina